UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80480-CIV-HURLEY/HOPKINS

JONATHAN E. PERLMAN,

      **Plaintiff,**

v.

DOROTHY DELISFORT-
THEODULE, et al.,

      **Defendants.**
_____/

## MEMORANDUM OPINION CONTAINING
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS CAUSE** relates to an alleged Ponzi scheme that defrauded thousands of investors out of over $60 million. In this case, plaintiff Jonathan E. Perlman, as court appointed Receiver, sues Dorothy Delisfort-Theodule, who is the wife of the man who allegedly masterminded the Ponzi scheme, George Theodule. The amended complaint alleges that Mrs. Delisfort-Theodule knowingly participated in the scheme by, among other things, making material misrepresentations to potential investors and misappropriating investor funds for her personal use and benefit. *See* DE # 6. The Receiver seeks to avoid and recover fraudulent transfers made to Mrs. Delisfort-Theodule pursuant to Florida's Uniform Fraudulent Transfer Act ("FUFTA"), Fla. Stat. § 726.101, *et seq.*

On September 28, 2010, the court granted partial summary judgment in favor of the Receiver. *See* DE # 71. The court found that the Receiver's unrebutted evidence demonstrated that (1) Mr. Theodule had been operating a Ponzi scheme, and (2) during the scheme, Mr. Theodule made transfers to Mrs. Delisfort-Theodule in the amount of $545,200. Case law provides that all transfers made by a debtor in furtherance of a Ponzi scheme are fraudulent and subject to avoidance. *See In*

*re McCarn's Allstate Finance, Inc.*, 326 B.R. 843, 850 (Bankr. M.D. Fla. 2005) ("establishing the existence of a Ponzi scheme is sufficient to prove a Debtor's actual intent to defraud" for purposes of FUFTA); *see also Wiand v. Waxenberg*, 611 F.Supp.2d 1299, 1312 (M.D. Fla. 2009); *In re World Vision Entm't, Inc.*, 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002). Consequently, the court ruled that the Receiver had proven that the transfers received by Mrs. Delisfort-Theodule were fraudulent, thus establishing a "prima facie case and rais[ing] a rebuttable presumption that the transaction[s] [are] void." *Stephens v. Kies Oil Co., Inc.*, 386 So.2d 1289, 1290 (Fla. 3d DCA 1980).

Although a bench trial was specially set, at Mrs. Delisfort-Theodule's request, for October, 25, 2010, Mrs. Delisfort-Theodule failed to appear for trial. Rather than pursuing a default, the Receiver tried his case to the court, presenting live testimony from a forensic accountant and two victims of the scheme as well as the transcripts of Mrs. Delisfort-Theodule's depositions. Having carefully considered the evidence presented at trial and the arguments of the Receiver, the court now enters its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a):

## DISCUSSION

*1.   Findings of Fact*

1. Beginning in November 2007 and continuing for over a year, Mr. Theodule solicited, in face-to-face meetings and through word of mouth, investment funds from Haitian Americans.

2. Mr. Theodule promised potential investors that he could double their money in 90 days by making risk-free investments in well-known companies.

3. Mrs. Delisfort-Theodule participated in the meetings, encouraging potential investors to invest and claiming that she had personally doubled the money she invested. Some of the meetings were held at her home.

4. Mrs. Delisfort-Theodule created and managed Wealth Builders Circle, LLC, a so-called "investment club." Wealth Builders was an entity through which potential investors could (and did) invest money with Mr. Theodule.

5. Investors reposed their trust in Mr. Theodule, investing tens of millions of dollars in him and the Receivership entities.

6. Mr. Theodule did not use investor funds as promised. He lost a portion of the funds in risky stock trades; transferred a large percentage of the funds to third parties, including family members; and used the rest of the funds to make interest and principal payments to earlier investors.

7. From November 2007 to December 2008, Mrs. Delisfort-Theodule received transfers in the amount of $3,000,200 from Mr. Theodule and the Receivership Entities.[1]

2. *Conclusions of Law*

   a. *FUFTA*

8. FUFTA was adopted to prevent an insolvent debtor from transferring assets away from creditors when the debtor's intent is to hinder, delay, or defraud any of its creditors. *See* Fla. Stat. § 726.105(1).

9. To establish a claim under FUFTA, the plaintiff must allege 1) there was a creditor sought to be defrauded, 2) a debtor intending fraud, and 3) a conveyance of property which could have been available to satisfy the debt. *Nationsbank, N.A. v. Coastal Utils. Inc.*, 814 So.2d 1227, 1229 (Fla. 4th DCA 2002).

---

[1] In the order granting partial summary judgment, the court found that the Receiver had proven that Mrs. Delisfort-Theodule received $545,200 in fraudulent transfers. During the bench trial, the Receiver identified additional fraudulent transfers received by Mrs. Delisfort-Theodule in the amount of $2,455,000. In total, the receiver's evidence shows that Mrs. Delisfort-Theodule received $3,000,200 in fraudulent transfers.

3

10. In evaluating whether a transfer was made with the intent to defraud, "courts generally consider the totality of the circumstances and determine whether any 'badges of fraud' are present in connection with a particular transfer." *In re Ramsurat*, 361 B.R. 246, 254 (Bankr. M.D. Fla. 2006); *see* Fla Stat. § 726.105(2)(a)-(k).

11. However, fraudulent intent is established as a matter of law in cases where the debtor operated a Ponzi scheme, because transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors. *See In re McCarn's Allstate Finance, Inc.*, 326 B.R. 843, 850 (Bankr. M.D. Fla. 2005).

12. Once a transfer has been proven fraudulent, the recipient of the transfer bears the burden of showing why the transfer should not be avoided. The recipient may do this by showing that the good faith defense applies, *see* Fla. Stat. § 726.109(1), or that she was a "mere conduit," *see Nordberg v. Sanchez*, 813 F.2d 1177 (11th Cir.1987).

13. If the recipient of the transfer does not carry her burden, the creditor "may obtain ... avoidance of the transfer ... to the extent necessary to satisfy [his] claim." Fla. Stat. 726.108(1).

    b. *Transfers at issue were Fraudulent and are Avoidable*

14. The Reciever has proven that Mr. Theodule operated a multimillion dollar Ponzi scheme from November 2007 to December 2008. During that period, Mr. Theodule raised millions of dollars by promising exorbitant, risk-free returns. Unfortunately for investors, however, Mr. Thoedule conducted no legitimate business, losing all the money he actually invested in risky stock trades. He transferred millions to himself and third parties, including Mrs. Delisfort-Theodule. And as is typical in a Ponzi scheme, he paid former investors with later investors' money. *Seee U.S. v. Masten*, 170 F.3d 790, 797 ("It is a hallmark of a Ponzi scheme to convince potential investors that

Memorandum Opinion
Perlman v. Delisfort-Theodule
Case No. 09-80480-CIV-HURLEY/HOPKINS

capital supplied by investments is in fact profit.").

15. Mrs. Delisfort-Theodule received a total of $3,000,200 in transfers from Mr. Theodule and the Receivership Entities. Given the existence of the Ponzi scheme, these transfers are fraudulent for purposes of FUFTA. *See In re McCarn's Allstate Finance, Inc.*, 326 B.R. at 850.

16. Mrs. Delisfort failed to appear for trial or otherwise demonstrate that the transfers should not be avoided.

17. Accordingly, pursuant to Fla. Stat. 726.108(1), the Receiver is entitled to avoidance of the $3,000,200 in transfers received by Mrs. Delisfort-Theodule.

## CONCLUSION

For the reasons given above, the court finds in favor of the Receiver on his claim to avoid $3,000,200 in transfers received by Mrs. Delisfort-Theodule. Pursuant to Federal Rule of Civil Procedure 58, the court will enter final judgment by separate order.

**DONE** and **SIGNED** in Chambers in West Palm Beach, Florida, this 1ST day of November, 2010.

Daniel T. K. Hurley
U. S. District Judge

*Copies provided to counsel of record*